IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| AMANDA LOWE, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:15-CV-00436-KPJ |
| | § | |
| v. | § | |
| | § | |
| TEXAS ROADHOUSE, INC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment and Memorandum in Support (Dkt. 20). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff Amanda Lowe filed this lawsuit on June 5, 2015, in the 442nd Judicial District Court of Denton County, Texas. *See* Dkt. 1. Defendant Texas Roadhouse, Inc. filed a notice of removal from the state court on June 29, 2015. *See* Dkt. 1. On July 21, 2015, Plaintiff filed an amended complaint (the "Complaint") (Dkt. 8), which is the live pleading before the Court. The Complaint alleges that on or around October 8, 2014, Plaintiff fell "on an unsafe and defective exit ramp that did not comply with existing building codes and ordinances at a restaurant called Texas Roadhouse," owned by Defendant in Flower Mound, Denton County, Texas. *See* Dkt. 8 at p. 1. The Complaint further asserts that, as a result of the fall, Plaintiff suffered a broken ankle that required surgery. *See* Dkt. 8 at p. 1. Plaintiff brings suit on premises liability, negligence, and negligence per se for damages associated with past and present medical care and expenses,

1

past and present physical pain and suffering, mental anguish and emotional distress, and permanent physical impairment and disability. *See* Dkt. 8.

On May 25, 2016, Defendant filed the present motion for summary judgment (Dkt. 20). On June 3, 2016, Plaintiff filed a response to Defendant's motion for summary judgment (Dkt. 22). On June 13, 2016, Defendant filed a reply brief (Dkt. 24).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.

*Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendant contends it is entitled to summary judgment because it demonstrates that, as a matter of law, a dangerous condition did not exist on Defendant's property on the day of Plaintiff's fall, Defendant had no actual or constructive notice of the alleged dangerous condition, and Plaintiff has not established a claim against Defendant for gross negligence and the imposition of punitive damages. *See* Dkt. 20 at p. 2.

After a careful review of the record and the arguments presented, the Court is not convinced that Defendant has met its burden of demonstrating that there is no material issue of fact entitling it to judgment as a matter of law.

*Dangerous Condition*

An element of a Texas premises liability claim is the presence of a condition that posed an unreasonable risk of harm. *See Wal-Mart Stores, Inc. v. Diaz*, 109 S.W.3d 584, 587 (Tex.App.—Fort Worth 2003, no pet.). For a condition to pose an unreasonable risk of harm, there must be "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). Defendant relies on *Brinson Ford, Inc. v. Alger*, where the Texas Supreme Court held that a portion of ramp with no handrail at a car dealership did not pose an unreasonable risk of harm. 228 S.W.3d 161 (Tex. 2007). Notably, in that case it was unquestioned that the area with an elevation change without handrails met applicable safety standards, and the ramp was outlined in yellow stripping. *Id.* at 163.

Plaintiff contrasts the yellow stripping on the ramp in *Brinson Ford* with the red paint on the ramp in this case. *See* Dkt. 22 at p. 9 ("The red paint on the ramp in this case was almost completely worn and severely faded in the few areas where the paint was not fully worn."). Further, Plaintiff notes that during deposition questioning, she was shown pictures of the ramp, and she confirmed that the pictures show the ramp with worn red paint on it. In the transcript of Plaintiff's deposition, Plaintiff testifies that, to the best of her memory, the ramp looked, on the day of the fall, the same as it did in the photos she was presented. *See* Dkt. 24 at p. 3, Ex. 24-1 at pp. 5-7. Plaintiff argues, however, that she only realized the condition of the ramp, precisely, the fact that it was painted and the presence of an elevation change in the portion of the ramp without rails, after she fell, not before. *See* Dkt. 22 at p. 9.

Defendant contends that from "the photograph of the ramp, [Plaintiff] testified it was consistent with her memory of how the ramp looked (meaning she saw it), the red paint is clearly

4

visible and the area in red has a slight elevation change." Dkt. 24 at p. 3. Defendant argues that the only conclusions are that Plaintiff saw the paint before she fell, or that she did not see the paint, but only as the result of inattention. *See* Dkt. 24 at p. 3.

Plaintiff's deposition testimony does indicate she was able to recognize the presence of red paint in a picture of the ramp. A jury, however, could find from this record that even an extremely faded paint job might be perceived when studying a photograph aimed precisely at the painted object. The evidence, at the very least, distinguishes the current case from *Brinson Ford*. In this case, the status of the ramp as compliant with safety standards on the day of Plaintiff's fall is in question. Further, unlike the yellow stripping referenced in *Brinson Ford*, of which the visibility was not referenced or questioned in the Texas Supreme Court's decision, photos submitted to the Court show significant weathering of red paint in an area of the ramp not protected by a handrail. *See* Dkt. 22, Exs. 1-3. Defendant points to the fact that it received approval from the state licensing agency before the incident and had not received any notices of violations related to the ramp, but this speaks to the state of the ramp at some time prior to the day in question and not at the time of the Plaintiff's fall. The evidence does not demonstrate a legally conclusive answer to the question of whether or not the condition of the ramp, including the degree of weathering of the red paint on the ramp, presented a condition that posed an unreasonable risk of harm on the day of Plaintiff's fall. Further, this factual determination is an objective analysis, independent of Defendant's challenges as to what Plaintiff actually perceived. It is also a genuine issue of material fact properly determined by a jury. As such, Defendant's motion for summary judgment is denied as to the presence of a dangerous condition.

5

*Notice*

While Defendant contends that, as a matter of law, it did not have actual or constructive notice of a dangerous condition because there is no evidence that it knew the ramp was unreasonably dangerous, it created a dangerous condition, or it had received any reports of falls or complaints or violations related to the ramp, Defendant's managing partner testified he inspected the property at issue daily:

> Q. How often do you as the managing partner inspect the property at the Texas Roadhouse location in Flower Mound where Amanda Lowe fell?
> A. You keep saying "inspect." What do you—can you clarify what you mean?
> Q. You just walk around the property to ensure that there are no hazards; there's nothing that needs –
> A. Daily.
> Q. Okay. You do that on a daily basis?
> A. Absolutely.
> Q. And what time of day do you do that?
> A. Usually first thing in the morning or right before we open.
> Q. And tell me about what you do, like about the process you undertake when you inspect.
> A. I open the restaurant and do what we call a perimeter check: Walk around, pick up any trash/debris, make sure the lights are working, everything's on and then—that's in the morning time. And then right before you open, you kind of do the same thing: Walk around and make sure everything looks good, the lights are on, no trash, the radio's working outside and inside. That's pretty much it.

Dkt. 20 at pp. 7-8; Dkt. 22 at p. 10, Ex. 22-3 at pp. 5-6. Further, he testified as to knowledge of the ramp's condition on the day Plaintiff fell:

> Q. Okay. And to your understanding, are the pictures in Exhibits 2, 3 and 4 the ramp location where Ms. Lowe fell?
> A. Yes it is, to my knowledge.
> Q. Do these pictures look the same as the day she fell?
> A. Yes.

Dkt. 22, Ex. 22-3 at p. 7. The manager also testified as to hiring someone to paint the ramp on a date after Plaintiff's fall, indicating he was in a position in which he could observe the state of the ramp, evaluate it, and hire someone to paint it if necessary:

> Q. Have you or anyone else painted the ramp that is seen in Exhibits 2, 3 and 4 since Amanda Lowe fell?
> A. It has been, yes.
> …
> Q. Okay. When was the ramp painted?
> A. I had it painted when I added a parking lot to the restaurant. We went and we had to repaint, you know, the striping of the fire lanes and all that stuff, so we put a coat of paint on top of it.
> Q. Okay. And did you actually paint it or did you have someone –
> A. No.
> Q. You hired somebody?
> A. Yeah. They hired somebody.
> Q. And do you know why they painted the ramp?
> A. I asked them to.
> Q. And why did you ask them to paint the ramp?
> A. Because it looked like it needed to be painted.

Dkt. 22, Ex. 22-3 at pp. 10-11. The Court finds, therefore, there is ample evidence from which a jury could find the Defendant had knowledge of the ramp, and specifically, of its condition. Therefore, summary judgment is denied as to the absence of notice.

*Gross Negligence*

Defendant does not address specifically the issue it raises in its opening paragraphs regarding whether Plaintiff establishes a claim against Defendant for gross negligence and the imposition of punitive damages beyond general arguments that Defendant was not negligent. As such, the Court finds that Defendant does not meet its burden to prove that there is no genuine issue of material fact as to this claim. Defendant is not entitled to judgment as a matter of law on the issue of gross negligence.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment and Memorandum in Support (Dkt. 20) is hereby **DENIED**.

It is SO ORDERED.

**SIGNED this 30th day of September, 2016.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE